No. 23-1823

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

ANDERSON FEDERATION OF TEACHERS, et al.

Plaintiffs-Appellees,

v.

TODD ROKITA,

Defendant-Appellant.

On Appeal from the United States District Court
for the Southern District of Indiana
No. 1:21-cv-01767-SEB-KMB
Honorable Sarah Evans Barker

**Brief of Amici Curiae the Mackinac Center for
Public Policy, the Liberty Justice Center, and the
Freedom Foundation in Support of Defendant-
Appellant's Brief Seeking Affirmance in Part and
Reversal in Part of the District Court's Decision**

Patrick J. Wright
Stephen A. Delie
Mackinac Center for
Public Policy
140 West Main Street
Midland, MI 48640
(989) 631-0900
Wright@mackinac.org
delie@mackinac.org

Shella Alcabes
Freedom Foundation
PO Box 552
Olympia, WA 98507
(360) 956-3482
salcabes@freedom-
foundation.com

Jeffrey M. Schwab
*Counsel of Record*
Liberty Justice Center
440 North Wells Street
Suite 200
Chicago, Illinois 60654
Phone: 312-637-2280
jschwab@libertyjustice-
center.org

*Counsel for Amici Curiae*

## Appearance and Circuit Rule 26.1 Disclosure Statement

The undersigned counsel for Amici Curiae furnishes the following statement in compliance with Circuit Court Rule 26.1 and Fed. R. App. P. 26.1:

(1) The full name of every party that the attorney represents in the case:

The Liberty Justice Center, the Mackinac Center for Public Policy, and the Freedom Foundation.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this Court:

The Liberty Justice Center, the Mackinac Center for Public Policy, and the Freedom Foundation will represent amici curiae before this Court.

(3) If the party or amicus is a corporation:
(i) Identify all its parent corporations, if any:

Not applicable to any amici.

(ii) List any publicly held company that owns 10% or more of the party's or amicus' stock:

Not applicable to any amici.

Dated: July 19, 2023

/s/ Jeffrey M. Schwab
Jeffrey M. Schwab
*Counsel of Record*
Liberty Justice Center
440 North Wells Street
Suite 200
Chicago, Illinois 60654
Phone: 312-637-2280
jschwab@libertyjusticecenter.org

i

## TABLE OF CONTENTS

INTEREST OF AMICI CURIAE ..................................................................... 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................ 3

ARGUMENT ............................................................................................ 4

    I.  Ind. Code § 20-29-5-6 does not implicate the First Amendment
       rights of the Appellee Unions or their members............................. 5

    II. The lower court incorrectly held that the changes made to
       payroll deduction by Ind. Code § 20-29-5-6 discriminate based
       on viewpoint. ................................................................................ 9

          A.   Access to state payroll deductions is a union subsidy,
               and as such can be regulated by the government. ......................... 9

          B.   Ind. Code § 20-29-5-6 is facially neutral and does not
               discriminate on the basis of viewpoint........................................... 11

          C.   Ind. Code § 20-29-5-6 survives rational basis review. .................. 20

CONCLUSION ......................................................................................... 23

CERTIFICATE OF COMPLIANCE .......................................................... 24

CERTIFICATE OF SERVICE .................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977)......................................................... 10

*Alachua Cnty. Educ. Ass'n v. Donald J. Rubottom*, No. 23-cv-111 (D. Fl. June 26, 2023) ........................................................................................................ 8

*Amalgamated Transit Union Loc. 85 v. Port Auth. Of Allegheny Cnty.*, 39 F. 4th 95 (3d Cir. 2002)................................................................................... 7

*Araujo v. Serv. Emps. Int'l Union Loc. 775,* No. 20-05012 (E.D. Wash. Jan. 30, 2020) .................................................................................................... 22

*Bailey v. Callaghan*, 715 F. 3d 956 (6th Cir. 2013)................................... 4, 14, 15, 16

*Brady v. United States*, 397 U.S. 742 (1970) .................................................... 20

*Bourque v. Eng'rs and Architects Ass'n*, No. 21-04006 (C.D. Cal. Apr. 25, 2023) ...................................................................................................... 22

*Chicago Tchrs. Union v. Hudson* 475 U.S. 292 (1986)......................................... 10, 19

*Citizens United v. FEC*, 558 U.S. 310 (2010) ................................................... 12, 13, 14

*Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177 (2007) ...................................... 2, 10, 22

*FCC v Beach Commc'ns, Inc.* 508 U.S. 307 (1993) ............................................ 22

*Gatdula v. Serv. Emps. Int'l Union Loc. 775,* No. 20-00476 (W.D. Wash. Mar. 26, 2021) ...................................................................................................... 22

*Gilpin v. Am. Fed. State, Cnty., Mun. Emps., AFL-CIO*, 875 F. 2d 1310 (7th Cir. 1989) ............................................................................................... 19

*Harris v. McRae*, 448 U.S. 297 (1980) ............................................................ 13

*Higher Soc'y of Ind. v. Tippecanoe Cnty, Ind.*, 858 F.3d 1113 (7th Cir. 2017) ....................................................................................................... 6

*Hill v. Colo.*, 530 U.S. 703 (2000)................................................................... 13

*Hubbard v. Serv. Emps. Int'l Union Loc. 2015,* 552 F. Supp. 3d 955 (E.D. Cal. Aug. 6, 2021)............................................................................................ 22

*In re Hubbard*, 803 F. 3d 1298 (11th Cir. 2015)....................................... 4, 16

*Iowa State Educ. Ass'n v State*, 928 N.W. 2d 11 (Iowa, 2019) .................................... 17

*Janus v. AFSCME, Council 31*, 138 S.Ct. 2448 (2018) ........................................ passim

*Jarrett v. Service Emps. Int'l Union Local 503*, No. 21-35133, 2023 WL 4399242 (9th Cir. July 7, 2023) ................................................................. 22

*Jimenez v. Serv. Emps. Int'l Union Loc. 775*, No. 21-03128 (E.D. Wash. Mar. 4, 2022) ............................................................................................... 22

*Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550 (2005) ........................................... 5, 6

*Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001) ................................................. 13

*Marsh v. AFSCME 3299*, No. 21-15309, 2023 WL 4363121 (9th Cir. July 6, 2023) ................................................................................................... 22

*Mech v. Sch. Bd. of Palm Beach Cnty.*, 806 F.3d 1070 (11th Cir. 2015) ................... 6-7

*Moran v. Burbine*, 475 U.S. 412 (1986) ........................................................................ 20

*Ochoa v. Pub. Consulting Grp., Inc.*, 48 F. 4th 1102 (9th Cir. 2022) ......................... 22

*Okla. Corr. Pro. Ass'n Inc. v. Doerflinger*, 521 Fed. App'x 674 (10th Cir. 2013 .................................................................................................................... 12

*Parde v. Service Emps. Int'l Union, Local 721*, No. 22-03320 (C.D. Cal. Dec. 9, 2022) .............................................................................................. 22

*Pleasant Grove City v. Summum*, 555 U.S. 467 (2009) .................................................. 5

*Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930*, No. 20-55643, 2023 WL 4398498 (9th Cir. July 7, 2023) ............................................. 25

*Regan v. Tax'n With Representation of Wash.*, 461 U.S. 540 (1983) ................. passim

*S. C. Educ. Ass'n v. Campbell*, 883 F.2d 1251 (4th Cir. 1989) .............................. 4, 16

*Schiewe v. Serv. Emps. Int'l Union Loc. 503*, No. 20-35882, 2023 WL 4417279 (9th Cir. July 10, 2023) ................................................................... 22

*Semerjyan v. Serv. Emps Int'l Union Loc. 2015*, 489 F. Supp. 3d 1048 (C.D. Cal. Sept. 25, 2020) ............................................................................. 22

*Smith v. Ark. State Highway Emps.*, 441 U.S. 463 (1979) .................................... 9-10

*Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011) ........................................................ 14

*Stoia v. Serv. Emps. Int'l Union Loc. 2015,* No. 20-01760 (E.D. Cal. Aug. 27, 2021) .................................................................................. 23

*Trees v. Serv. Emps. Int'l Union Loc. 503,* No. 6:21-cv-468-MK (D. Or. Dec. 8, 2021) ...................................................................................... 22

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015) ..................................................................................................... 5, 7

*Wisconsin Educ. Ass'n Council v. Walker*, 705 F. 3d 640 (7th Cir. 2013) .......... passim

*Wright v. Serv. Emps. Intl. Union Loc. 503*, 48 F. 4th 1112 (9th Cir. 2022) .................................................................................................. 22

*Yates v. Washington Fed'n of State Emps.,* No. 20-35879, 2023 WL 4417276 (9th Cir. July 10, 2023) ............................................................ 22

*Ysursa Pocatello Educ. Ass'n*, 555 U.S. 353 (2009) ............................................ passim

*Zielinski v. Serv. Emps. Int'l Union Loc. 503*, No. 20-36076, 2022 WL 4298160 (9th Cir. Sept. 19, 2022) ........................................................... 22

**Statutes**

Senate Enrolled Act 251, 2021 Gen. Assemb., Reg. Sess. (Ind. 2021) ............... passim

Senate Enrolled Act 297, 2022 Gen. Assemb., Reg. Sess. (Ind. 2022) ............... passim

## INTEREST OF AMICI CURIAE[1]

The Liberty Justice Center is a nonprofit, nonpartisan, public-interest litigation center that seeks to protect economic liberty, private property rights, free speech, and other fundamental rights. The Liberty Justice Center pursues its goals through strategic, precedent-setting litigation to revitalize constitutional restraints on government power and protections for individual rights. The Liberty Justice Center represented Mark Janus before the United States Supreme Court in *Janus v. AFSCME,* 138 S. Ct. 2448 (2018), which held that the First Amendment protects government employees from being compelled to pay money to a public-sector union. The Liberty Justice Center is interested in this case because the law at issue here seeks to ensure that public employees in Indiana know and can exercise their *Janus* rights freely.

The Mackinac Center for Public Policy is a Michigan based, nonpartisan research and educational institute advancing policies fostering free markets, limited government, personal responsibility, and respect for private property. The Center is a 501(c)(3) organization founded in 1987. It has played a prominent role in studying and litigating issues related to mandatory collective bargaining laws, and its work in that area has been cited by the United States Supreme Court. See, *Janus*, 138 S. Ct. at 2466, n.3.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29, undersigned counsel certify that: no counsel for a party authored the brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person or entity, other than the *Amici Curiae*, its members, or its counsel contributed money intended to fund the preparation or submission of this brief.

The Freedom Foundation ("Foundation") is a 501(c)(3) nonprofit organization working to advance individual liberty, free enterprise, and limited, accountable government. The Foundation focuses on public sector labor reform through litigation, legislation, education, and community activation. Among other endeavors, the Foundation has worked to protect the constitutional and statutory rights of union-represented public employees and regularly assists employees in understanding and exercising those rights. The Foundation has represented municipal employees, teachers, state workers, and partial-public employees in litigation against labor unions and public employers who have violated employees' rights regarding union membership and dues payment.

The Foundation regularly files *amicus curiae* briefs in cases concerning the First Amendment rights of public employees. *See, e.g., Troesch v. Chicago Teachers Union, Local Union No. 1, AFT*, No. 21-1525, 2021 WL 2587783 (7th Cir.), cert. pet. filed, 20-1786, cert. denied sub nom. *Troesch v. Chicago Tchrs. Union*, 142 S. Ct. 425 (2021); *Thompson v. Marietta Education Association, et al.,* 972 F.3d 809 (6th Cir. 2020), *cert. pet. filed*, 20-1019, cert. denied 141 S. Ct. 2721 (2021); *Janus v. AFSCME*, 138 S. Ct. 2448 (2018); *Friedrichs v. California Teachers Association*, 136 S. Ct. 1083 (2016); *Davenport v. Washington Education Ass'n*, 551 U.S. 177, 185 (2007).

The Foundation also filed an *amicus curiae* brief in *Dodd v. AFSCME, Council 5*, 8th Cir. No. 21-2749, in which the employee alleges the union forged his signature to obtain dues. The brief notes the Foundation has filed 14 lawsuits on behalf of

employees who allege they did not sign dues authorizations but nevertheless had dues deducted from their lawfully earned wages.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This Court should recognize that the requirements of Ind. Code § 20-29-5-6[2] are consistent with the U.S. Constitution. When addressing other labor-related legislation, the United States Supreme Court, this Court, and other Circuit Courts have rejected arguments almost identical to those advanced by the Appellees.

Appellees are comprised of three unions and three Indiana teachers (hereinafter "Appellee Unions"),[3] which have argued that Ind. Code § 20-29-5-6 violates their First Amendment rights for two reasons. First, the Appellee Unions argue that requiring public employees to sign a form which informs workers of their right to not join a union is a form of compelled speech which requires their members to endorse that message. The District Court properly rejected this theory by finding that this statement is protected government speech. Second, the Appellee Unions argue that, because Ind. Code § 20-29-5-6 only burdens school employees wishing to join a union, but not those who refuse to join, these laws create unconstitutional viewpoint discrimination. The District Court erroneously accepted this reasoning by concluding these bills apply solely to "pro-union teachers," subjecting them to unconstitutional

---

[2] Senate Enrolled Act 251, as modified by SEA 297, is codified at Ind. Code. § 20-29-5-6. While the original language of SEA 251 and the modifications made to it by SEA 297 are procedurally relevant, the ultimate question at issue in this appeal is whether the language of Ind. Code § 20-29-5-6 is constitutional. Thus, unless otherwise relevant, the requirements of SEA 251 as modified by SEA 297 will be referred to as codified.

[3] Appellees are specifically the Anderson Federation of Teachers, the Avon Federation of Teachers, the Martinsville Classroom Teachers Association, G. Randall Harrison, Suzanne Lebo, and Shannon Adams.

burdens in light of that viewpoint. But Ind. Code § 20-29-5-6 is facially neutral, and it was improper for the District Court to conclude that its requirements were burdensome.

As a matter of law, Ind. Code § 20-29-5-6 contains only government speech, and no public employee is required to endorse that speech in order to join a union. Both the U.S. Supreme Court and this Court have upheld similar statutory provisions as government speech that is not discriminatory based on viewpoint. *Ysursa Pocatello Educ. Ass'n*, 555 U.S. 353 (2009); *Wisc. Educ. Ass'n Council v. Walker*, 705 F. 3d 640 (7th Cir. 2013); *Bailey v. Callaghan*, 715 F. 3d 956 (6th Cir. 2013); *S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251 (4th Cir. 1989); *In re Hubbard*, 803 F. 3d 1298 (11th Cir. 2015). Courts have repeatedly recognized that legislatures have the ability (and indeed are often required) to draw lines distinguishing between different interest groups, and may freely do so unless those distinctions are drawn based on a viewpoint inherently tied to one of those groups' existence. *Wisc. Educ. Ass'n Council*, 705 F. 3d at 649. In concluding that Ind. Code § 20-29-5-6 placed additional burdens on pro-union school employees, the District Court has improperly applied binding precedent. *Id*. The District Court's permanent injunction should be overturned.

## ARGUMENT

The Appellee Unions have argued that the notice-of-rights provision violates their First Amendment rights by compelling the Appellee Unions and their members to affiliate with a message they disagree with. The District Court correctly concluded that the notice-of-rights language required by these bills is protected government speech, and that it does not force the Appellee Unions to affiliate with that speech.

4

The District Court erred, however, in agreeing with Appellee Unions' argument that the additional requirements for payroll deduction of union dues imposed by Ind. Code § 20-29-5-6 discriminates based on viewpoint. That conclusion is foreclosed by binding Circuit precedent.

## I.  Ind. Code § 20-29-5-6 does not implicate the First Amendment rights of the Appellee Unions or their members.

As a matter of law, "when the government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015), citing *Pleasant Grove City v. Summum*, 555 U.S. 467, 468 (2009). As a result, "government statements (and government actions and programs that take the form of speech) do not normally trigger the First Amendment rules designed to protect the marketplace of ideas. *Id.* (citing *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 559 (2005)). The government may not, however, compel private individuals to convey the government's preferred speech. *Walker*, 576 U.S. at 208.

The District Court correctly determined that the language of the authorization form is government speech, rather than a requirement that school employees endorse a particular message. Whether speech can be considered government speech rests on three factors, namely, "the history of the expression at issue, the public's likely perception as to who (the government or a private person) is speaking, and the extent to which the government has actively shaped or controlled the expression." *Shurtleff v. City of Boston, Mass.*, 142 S. Ct. 1583, 1590 (2022) (citing *Walker*, 576 U.S. at 209-14).  The first factor evaluates whether the speech at issue had traditionally been

used to communicate messages on behalf of the government, the second examines whether the public would interpret the speech as belonging to the government, and the third evaluates the degree of the government's editorial control over the speech. *Higher Soc'y of Ind. v. Tippecanoe Cnty., Ind.*, 858 F.3d 1113, 1117 (7th Cir. 2017). Application of these factors demonstrate the notice form in question is clearly government speech.

Here, the State of Indiana maintains complete control of the speech in question, with the notice-of-rights statement having been written directly into statute. The only party with the authority to modify the language required by Ind. Code § 20-29-5-6 is the Indiana Legislature, or, put another way, the government itself. Further indicia that the notice-of-rights statement is government speech is the statement itself, which conspicuously begins with the phrase "The State of Indiana wishes to make you aware . . . ." Since the Indiana Legislature has dictated the language required for the notice-of-rights provision, its control over that language is patently obvious. Ind. Code § 20-29-5-6(d). Given that any other language on the form is developed by the Indiana Attorney General, the Indiana Education Employment Relations Board, and the Indiana Department of Education, no language of the form required by Ind. Code § 20-29-5-6 contains the speech of any party other than a government actor. When control of speech is sufficiently clear, a long history of the government using a particular medium of speech is not necessary. *See, e.g.*, *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 560-67 (2005) (finding government speech without historical inquiry on the basis of control); *Mech v. Sch. Bd. of Palm Beach Cnty.*, 806 F.3d 1070,

1076 (11th Cir. 2015) (finding government control of the information to be contained on a form to be indictive of control despite an absence of historical parallel). That is precisely the case here.

As the District Court properly ruled:

> [g]overnment speech may adopt a particular viewpoint, so long as it does not coerce private speakers into espousing a certain view. *Amalgamated Transit Union Local 85 v. Port Auth. Of Allegheny Cnty.*, 39 F.4th 95, 108 (3d Cir. 2002) (citing *Walker*, 576 U.S. at 207-208). Government speech is not, however, exempt from First Amendment attack if it uses a means that restricts private expression in a way that abridges the freedom of speech, as is the case with compelled speech. *Shurtleff*, 142 S.Ct. at 1599 (Alito, J., concurring.)

Appellant's Short Appendix 19.

The notice-of-rights language neither coerces the Appellee Unions to speak a particular message, nor does it abridge their freedom of speech. The Appellee Unions remain free to express their disagreement as to the statements made by the State of Indiana publicly, or in the materials they distribute to their members. In fact, nothing in Ind. Code § 20-29-5-6 would prevent the Appellee Unions' members from simply writing their objections next to the statement if they are particularly incensed by the State's message. Further, the statement itself is clearly directed at the reader, and does not attempt to require the reader to speak any message whatsoever. In short, the notice-of-rights language neither requires a person to affiliate with the state's message, nor silences those who wish to disagree with it.

The fact that the Appellee Unions may voluntarily distribute Indiana's speech due to a desire to retain members does not alter the conclusion that those forms are government speech, and nothing in Ind. Code § 20-29-5-6 requires the Unions to

associate with that speech. The U.S. District Court for the Northern District of Florida recently interpreted a bill with requirements similar to those of Ind. Code § 20-29-5-6, and reached that conclusion when denying various unions' motion for a preliminary injunction:

> This Court also agrees with Plaintiffs that, in the real world, unions that desire to continue to grow—or even exist—would most likely shoulder the burden of printing the forms, filling out the necessary disclosures, and distributing them to prospective members for signatures to avoid the consequences set out in section 447.305 and PERC's proposed rule. But while this may be the most effective and convenient way for Plaintiffs to ensure their members sign and date the forms in compliance with the new requirements, the law itself does not command Plaintiffs to take this action. Moreover, by terms of the statute, Plaintiffs are not directly penalized if they fail to convey the state's message to members through the required form. In this way, this case is unlike each of the compelled speech cases Plaintiffs cite in support of their claim.
>
> . . .
>
> But here, the challenged provision commands *employees* who desire to join a union to sign and date the government-drafted form. That they must do so "with the bargaining agent" does not mean the bargaining agent must disseminate the form, post the state's message, or otherwise communicate any message on the state's behalf.

*Alachua Cnty. Educ. Assoc. et. al. v. Donald J. Rubottom et. al.*, No. 23-cv-111 (D. Fl. June 26, 2023) (emphasis original).[4] The requirements of Ind. Code § 20-29-5-6 are analogous. As adopted, these bills require employees to execute authorization forms containing government speech designed to advise them of their rights. School employers must receive this form directly from their employees, and they must verify the authenticity of those forms. Ind. Code § 20-29-5-6(c). Nothing in the law requires the Appellee Unions to distribute the forms, even if they choose to do so as a matter

---

[4] Case 1:23-cv-00111-MW-HTC, Document 45.

8

of convenience. *See generally*, Ind. Code § 20-29-5-6. With no dissemination requirement, Appellee Unions cannot demonstrate that they have been forced to affiliate with Indiana's message.[5]

## II. The lower court incorrectly held that the changes made to payroll deduction by Ind. Code § 20-29-5-6 discriminate based on viewpoint.

After determining that the notice-of-rights form was permissible government speech, the District Court evaluated the impact of the additional requirements of Ind. Code § 20-29-5-6, namely, that school employees wishing to have their dues deducted via payroll sign a form containing the notice-of-rights statement, provide it directly to their employer, and renew their approval of dues deductions on an annual basis. *See generally*, Ind. Code § 20-29-5-6. The District Court ultimately determined that the bills impermissibly discriminated against pro-union teachers on the basis of viewpoint, as the additional requirements of Ind. Code § 20-29-5-6 would only impact those teachers who support a union, and who wish to have their dues deducted. In doing so, the District Court violated longstanding precedent of both the United States Supreme Court and this Court.

### A. Access to state payroll deductions is a union subsidy, and as such can be regulated by the government.

States enjoy broad authority to regulate public-sector workers; indeed, the Supreme Court has noted that it would be constitutional for a state to completely eliminate public-sector collective bargaining. *Smith v. Ark. State Highway Emp.*, 441

---

[5] Individual Appellees, meanwhile, are only required to sign a form authorizing dues deductions. Under *Ysursa*, their individual speech is neither implicated nor compelled, as the language of the form is government speech. *See* Section I, *supra*.

U.S. 463, 465 (1979); *see also Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 184 (2007) (recognizing the government's ability to outlaw public-sector agency fees). As a result, courts have consistently upheld lesser restrictions on bargaining, particularly with respect to requirements relating to dues deductions.

It is well established that unions are not constitutionally entitled to access to a state's payroll system for purposes of dues deductions. *Davenport*, 551 U.S. at 185. In *Davenport*, the Supreme Court examined a requirement that employees consent to payroll deductions for political purposes. *Id.* at 191-92. It noted that these restrictions did not implicate the union's First Amendment rights, with any additional regulation merely building on the then-constitutional minimums established in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) and *Chicago Teachers Union v. Hudson* 475 U.S. 292 (1986). The Supreme Court noted, "The mere fact that Washington required more than the *Hudson* minimum does not trigger First Amendment scrutiny. The constitutional floor for unions' collection and spending of agency fees is not also a constitutional ceiling for state-imposed restrictions." *Davenport*, 551 U.S. at 185.

The same logic applies here to the additional requirements imposed by Ind. Code § 20-29-5-6. Unions are not constitutionally entitled to rely on the state to collect member dues. In *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009), the Supreme Court characterized dues deduction as a state subsidy of unions, which is not required by the Constitution:

> The First Amendment, however, protects the right to be free from government abridgement of speech. While in some contexts the government must accommodate expression, it is not required to assist others in funding the expression of particular ideas, including political

ones. '[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny.' *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 549 (1983); cf. *Smith v. Highway Emps*, 441 U.S. 540 (1979) (per curiam) ("First Amendment does not impose any affirmative obligation on the government to listen, respond to, or, in this context, to recognize a [labor] association and bargain with it.").

*Ysursa*, 555 U.S. at 358. (parallel citations omitted, cleaned up). The Supreme Court ultimately concluded that the regulation of payroll deductions simply did not implicate the unions' First Amendment rights:

While publicly administered payroll deductions for political purposes can enhance the unions' exercise of First Amendment rights, Idaho is under no obligation to aid the unions in their political activities. And the State's decision not to do so is not an abridgement of the unions' speech; they are free to engage in such speech as they see fit. They simply are barred from enlisting the State in support of that endeavor.

*Id.* at 359.

As determined by *Janus*, all activities performed by a public-sector union are inherently political in nature. *Janus*, 138 S. Ct. at 2480. Thus, the deduction of dues through payroll deduction is tantamount to a state subsidizing political speech. As noted in *Ysursa*, a state cannot be required to do so, and its refusal to provide such a subsidy is not a constitutional violation.

### B.    Ind. Code § 20-29-5-6 is facially neutral and does not discriminate on the basis of viewpoint.

The Appellee Unions' core contention is that imposing additional conditions on school employees who want to have their dues deducted by the state creates a situation in which only pro-union school employees will be required to comply with Ind. Code § 20-29-5-6. Specifically, they seek to challenge the requirements that these school employees execute and complete an authorization form, present it to their

11

employer, and verify its authenticity. These requirements must be fulfilled annually by those school employees seeking to have dues deducted via payroll. Employees who do not want dues deducted through payroll, meanwhile, need not take any action. As a result, the Appellee Unions argue, an otherwise facially neutral law impermissibly burdens speakers based on their viewpoint. This argument is neither new nor convincing: it was specifically advanced and rejected by this Court in *Wisconsin Educational Association*, 705 F.3d at 648.

The District Court ultimately concluded that Ind. Code § 20-29-5-6 created two distinct classes of school employee, and imposed burdens on "pro-union" employees that other school employees did not face. The District Court departed from *Wisconsin Educational Association* by arguing that, "in some cases, 'the speaker/viewpoint distinction may as a practical matter be illusory.'" Appellant's Short Appendix 29 (quoting *Okla. Corr. Pro. Ass'n Inc. v. Doerflinger*, 521 Fed. App'x 674, 679 (10th Cir. 2013) (citing *Citizens United v. FEC*, 558 U.S. 310 (2010))). It further determined that "'speech restrictions based on the identity of the speaker are all too often a means to control content.'" *Id*. Yet *Wisconsin Educational Association* forecloses such a determination, and explicitly rejected *Citizens United* as a rationale to find viewpoint discrimination.

In *Wisconsin Educational Association*, the plaintiff unions argued that Act 10, while facially neutral, was merely a "façade for invidious viewpoint discrimination." 740 F. 3d at 649. This Court explicitly rejected this argument as improper, stating: "These arguments require peering past the text of the statute to infer some invidious

legislative intention. We decline this invitation." *Id.* at 649-50. This Court elaborated further, explaining that "[t]he correlation between political endorsements and access to the payroll system does not render Act 10 viewpoint discriminatory. That the benefits of Act 10's subsidy may fall more heavily on groups with one particular viewpoint does not transform a facially neutral statute into a discriminatory one." Relying on the Supreme Court's determination in *Hill v. Colorado*, 530 U.S. 703, 715 (2000), in which a statute that was clearly designed to limit pro-life speech outside abortion clinics was nevertheless upheld on the basis it was content neutral, this Court ultimately refused to look beyond Act 10's facial neutrality. *Wisc. Educ. Ass'n*, 740 F.3d at 652.

The District Court relied on a non-binding Tenth Circuit Case—which in turn relied on *Citizens United*—to find Ind. Code § 20-29-5-6 to be viewpoint discriminatory, and that avenue is foreclosed by *Wisconsin Educational Association*. In addressing *Citizens United*, this Court explained:

> On its face, Act 10 is neutral—it does not tie public employees' use of the state's payroll system to speech on any particular viewpoint. See [*Legal Servs. Corp. v.*] *Velazquez*, 531 U.S. [533,] 546–48 [2001] 121 S. Ct. 1043 (speech subsidy viewpoint discriminatory when conditioned on recipient advancing particular viewpoint). Nevertheless, the Unions argue that Act 10 facially discriminates on the basis of viewpoint because general employee unions and public safety unions will necessarily espouse different viewpoints. Maybe they do. But this argument merely recycles the Unions' earlier assertion that speaker-based discrimination in the subsidy context requires heightened scrutiny. It does not. *See Regan*, 461 U.S. at 549–50, 103 S. Ct. 1997 (citing *Harris [v. McRae]*, 448 U.S. [297,] 316 [(1980)]). The cases cited by the Unions, which invalidated laws discriminating on the basis of speaker, confirm this principle. Each one—unlike Act 10—involved a law that actively created barriers to speech rather than mere subsidies. For example, *Citizens United v. FEC* involved a law that prohibited speech by forbidding certain speakers

> from spending money, akin to prohibiting speech altogether. 558 U.S. 310, 130 S. Ct. 876, 896–97, 175 L.Ed.2d 753 (2010). Similarly, the statute in *Sorrell v. IMS Health, Inc.*—like that in *Citizens United*—actually prevented pharmaceutical manufactures from engaging in certain types of commercial speech. —— U.S. ——, 131 S. Ct. 2653, 2663, 180 L.Ed.2d 544 (2012). *While Sorrell.—like that in Citizens United and Citizens United support the unconstitutionality of speaker-based discrimination in statutes that prohibit or burden speech, Regan controls on government subsidies of speech: speaker-based distinctions are permissible. Regan*, 461 U.S. at 548–49, 103 S. Ct. 1997.

*Wisc. Educ. Ass'n.*, 705 F.3d at 648-49 (emphasis added). This Court correctly concluded that a statue which differentiates between different categories of speakers does not render that statute viewpoint discriminatory:

> The mere fact that, in practice, the two categories of unions may express different viewpoints does not render Act 10 viewpoint discriminatory. The two groups here are no more likely to express different viewpoints (and the government subsidy no more likely to advantage a particular viewpoint) than the speaker-based distinction sanctioned in *Regan*. In that case, the advantaged group, veterans' organizations, undoubtedly held different viewpoints than those excluded from the subsidy; yet, the Court upheld the statute. *Id*. at 550–51, 103 S.Ct. 1997. Indeed, the Unions' argument proves too much: if different speakers necessarily espouse different viewpoints, then any selective legislative funding decision would violate the First Amendment as viewpoint discriminatory. Such an interpretation of the First Amendment would leave legislatures with the unpalatable choice of funding all expressive activity or none at all.

*Wisc. Educ. Ass'n*, 705 F.3d at 648-49.

Multiple other courts have reached this same conclusion. In *Bailey v. Callaghan*, the Sixth Circuit relied on *Wisconsin Educational Association* to conclude that a statute permitting payroll deductions for public-safety employees, but not public-school employees, did not create viewpoint discrimination:

> The plaintiffs also assert that Public Act 53 is viewpoint-discriminatory in a way that the statute in *Ysursa* was not. There, the challenged statute applied to unions across the board, whereas here, the plaintiffs

14

say, Public Act 53 only applies to unions that represent public-school employees. But there are several problems with this argument. The first—even if one assumes that viewpoint discrimination would be problematic with respect to payroll deductions—is that Public Act 53 by its terms does not discriminate based on viewpoint. It does not, for example, grant certain unions access to the payroll-deduction process, and deny access to others, based upon whether a union supports or opposes a particular policy position. To the contrary, the Act says nothing about speech of any kind. The Act is therefore facially neutral as to viewpoint, which goes a long ways towards defeating the plaintiffs' facial challenge. *Accord Wis. Educ. Ass'n Council v. Walker*, 705 F. 3d 640, 648 (7th Cir. 2013).

*Bailey*, 715 F.3d at 959.

In *Bailey*, as in this case, the plaintiff unions attempted to argue that the act denied them access to payroll based on their identity as a speaker, thereby creating viewpoint discrimination. The Sixth Circuit correctly identified that the act in question did no such thing, and merely restricted employers' ability to deduct dues through the payroll process:

> The Plaintiffs respond that the Act denies access to the payroll-deduction process based upon who the speaker is—i.e., it denies access to certain unions—which the plaintiffs say is a proxy for viewpoint discrimination. But again the contention is belied by the Act's terms. The Act does not deny payroll-access to particular unions. (Quite the contrary: the State almost certainly continues to collect membership dues for a number of the plaintiff-unions here—*e.g.*, local chapters of AFSCME and the Service Employees International Union—albeit from employees in agencies other than public schools.) Instead, Public Act 53 bars public-school employers from using their resources to collect membership dues on behalf of any union. The particular union to which an employee belongs, therefore, is irrelevant to whether a public employer can collect the employee's membership dues. What matters, instead, is who the *employer* is. And thus—even if one accepts the plaintiffs' speaker—as-proxy-for-viewpoint theory—the Act is neutral to identity as to viewpoint.

*Id.* at 959-60 (emphasis original).

15

*Bailey's* conclusion concisely recognized that laws like Ind. Code § 20-29-5-6 cannot even be considered to restrict speech:

> So Public Act 53 does not restrict speech; it does not discriminate against or even mention viewpoint, and it has nothing to do with a forum of any kind. Instead, the Act merely directs one kind of public employer to use its resources for its core mission rather than for the collection of union dues. This is not a First Amendment concern. *See Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 546, 103 S. Ct. 1997, 76 L. Ed. 2d 129 (1981) ("We again reject the notion that First Amendment rights are somehow not fully realized unless they are subsidized by the State") (internal quotation marks omitted).

*Id.*

The Sixth Circuit's opinion is not an outlier. The Fourth Circuit reached a similar holding when a South Carolina teachers' union challenged a prohibition on payroll deductions. *South Carolina Educational Association*, 883 F.2d at 1256. There, a South Carolina teacher's union challenged a statutory provision allowing state employees, but not teachers, access to payroll deductions. *Id.* Despite allegations of political retaliation, the Fourth Circuit upheld the law as facially neutral, ultimately concluding an examination in the subjective motivation of the legislature was improper. *Id.* at 1257

The Eleventh Circuit similarly rejected a First Amendment challenge to legislation that eliminated state-payroll deductions for union dues. *In re Hubbard*, 803 F.3d at 1313. Noting that the Sixth, Seventh, Fourth, and Tenth Circuit had already addressed the question of viewpoint discrimination, the Eleventh Circuit declined to consider the legislative motivation behind a facially neutral statute, and it upheld the law. *Id.*

The Iowa Supreme Court held that a law allowing payroll deductions for some organizations, but not public-sector employees, satisfied constitutional standards. *Iowa State Educ. Ass'n v State*, 928 N.W. 2d 11, 18 (Iowa, 2019). Although the union's challenge was brought under the Equal Protection Clause, the Iowa Supreme Court nevertheless concluded that it was improper to examine alleged motives, holding that, given the statute's facial neutrality, it need only survive a rational-basis review. *Id.* at 19.

In departing from the reasoning of these cases, as well as the binding precedent of *Wisconsin Educational Association* , the District Court finds itself at odds with the body of caselaw relating to payroll deductions and viewpoint discrimination. Even assuming the District Court's decision to evaluate the legislature's motivations was proper, it's determination that Ind. Code § 20-29-5-6 discriminates based on viewpoint remains flawed.

In *Wisconsin Educational Association*, this Court recognized that "[a] government subsidy 'that discriminates among speakers does not implicate the First Amendment unless it discriminates on the basis of ideas.'" *Id.* at 646-47 (citations omitted). In evaluating whether Wisconsin Act 10 of 2011 discriminated on the basis of ideas, the Court focused not on specific speech at issue, but rather, whether the Act's distinction between speakers involved an "inherent connection to a particular viewpoint." *Id.* at 649. The theory that a union's status as a public safety union inherently determined its political views was rejected, with any discriminatory effect deemed to be "merely coincidental." *Id. Wisconsin Educational Association* ultimately concluded that the

17

fact "the state gave one category of public employees the benefit of payroll dues deduction does not run afoul of the First Amendment." *Id.* at 647.

This Court reached this conclusion despite allegations that the classification was based on the fact that public-safety unions had generally endorsed Governor Scott Walker, while other unions had not. *Id.* at 649-50. This Court held: "The correlation between political endorsements and access to the payroll system does not render Act 10 viewpoint discriminatory. That the benefits of Act 10's subsidy may fall more heavily on groups with one particular viewpoint does not transform a facially neutral statute into a discriminatory one." *Id.* at 651. The idea that selective-legislative-funding decisions could be treated as viewpoint discrimination for purposes of the First Amendment was explicitly rejected. *Id.* at 649. In short, this Court determined that Wisconsin's decision to subsidize some unions through payroll deductions, but not others, did not discriminate based on viewpoint or run afoul of the First Amendment.

In light of *Wisconsin Educational Association*, the Appellee Unions' arguments are fundamentally flawed. An employee's authorization for the payroll deduction of their dues does not inherently communicate full-throated support for a union. School employees may be opposed to unionization, but nevertheless choose to pay dues to have the ability to influence a union's internal policies. Similarly, employees may not support a union's political giving but nonetheless remain a member to support the union's efforts at the bargaining table. These employees may find that having their dues paid through payroll deductions is simply the most convenient way to pay those

dues. But these employees are not constitutionally entitled to demand a state subsidy of that choice, and Indiana retains the ability to regulate the process that must be followed should it choose to do so.[6]

Furthermore, the District Court's position ignores the fact that Ind. Code § 20-29-5-6 is merely an inversion of the pre-*Janus* status quo. Accepting the District Court's reasoning, the pre-*Janus* state of labor relations would have constituted viewpoint discrimination against those school employees who did not wish to join a union. Prior to *Janus*, dissenting employees in states without a right-to-work law were entitled to have their union provide them with information about their right to refrain from contributing to that union's political activity. *Hudson*, 475 U.S. at 306. Under *Hudson*, "the nonunion employee ha[d] the burden of raising an objection, but [ ] the union retain[ed] the burden of proof." *Id.* Put another way, the *Hudson* Court found that requiring employees to object if they wished to opt-out of union membership was not viewpoint discrimination. Ind. Code § 20-29-5-6, meanwhile, requires employees who wish to join the union to complete certain procedures to demonstrate their affirmative consent. Neither arrangement discriminates based on viewpoint.

---

[6] This Court has specifically recognized that unionized employees are not monolithic. In *Gilpin v. Am. Fed. State, Cnty., Mun. Emps., AFL-CIO*, 875 F. 2d 1310, 1313 (7th Cir. 1989) this Court rejected the possibility that employees who refused to join a union could be certified as a class on the grounds that they lacked a commonality of interests. The Court reasoned that these employees may have rejected union membership for ideological reasons, or based on the fact that they could simply receive union benefits without full membership. *Id.* The same is true of the District Court's classification—employees may choose to have dues deducted through payroll for a variety of reasons. In holding that all employees who support dues deduction through payroll are inherently "pro-union," the District Court improperly assumed a commonality of interest that simply doesn't exist.

### C.     Ind. Code § 20-29-5-6 survives rational basis review.

Based on the above, Ind. Code § 20-29-5-6 is facially neutral, and as such, must only survive rational-basis review. *Wisc. Educ. Ass'n*, 705 F.3d at 654. As such, this Court need only identify "a rational relationship to a legitimate government interest." *Id.* (citation omitted). But *Ysursa* already provides a recognized interest sufficient to support the law's constitutionality: "Banning payroll deductions for political speech similarly furthers the government's interest in distinguishing between internal governmental operations and private speech." *Ysursa*, 555 U.S. at 360. No further showing should be required. Despite this, other important rationales justifying the passage of SEA 251 and SEA 297 abound, with the most important being Indiana's interest in ensuring school employees are fully informed of their constitutional rights.

In *Janus*, the Supreme Court recognized that public-sector employees have a First Amendment right to not be forced to pay a union with which they disagree. An employee who chooses to waive this right must "clearly and affirmatively consent before any money is taken from them." *Janus*, 138 S. Ct. at 2486). Like other constitutional waivers, an employee's waiver of their First Amendment right to not pay a union must be a "knowing, intelligent act . . . done with sufficient awareness of the relevant circumstances and likely consequences," and must be made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Brady v. United States*, 397 U.S. 742, 748 (1970); *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Note, a recent post-*Janus* survey has demonstrated that the vast majority of teachers were unaware of their rights to refuse to join a union.[7] According to that survey, only 17% of teachers were fully aware of their rights regarding union membership. The fact that most school employees are unaware of their rights has also been reported by major national media outlets.[8] Ind. Code § 20-29-5-6 represents Indiana's attempts to rectify this issue, and ensure that the state's school employees are not unknowingly waiving their First Amendment rights. Ensuring public employee's constitutional rights is a legitimate governmental interest, and Indiana is entitled to enact legislation to advance that interest.

Indiana's legislature may have been justifiably concerned that unions are incentivized to provide as little of this information to members as possible. Unions naturally have an incentive to maintain and grow membership as each dues-paying member represents increased revenue. Informing employees that they have the right to abstain from joining the union and paying dues runs contrary to unions' interests. Yet if employees are not informed of their rights, those employees may choose to become members without understanding those rights.

---

[7] Teacher Freedom, *One Year After Janus, Teacher Attitudes on Unions & Membership*, TeacherFreedom.org (June, 2019), https://teacherfreedom.org/wp-content/uploads/2019/06/One-Year_After_Janus_Poll_Teacher_Freedom.pdf.

[8] Tim Hoefer, *And Now the Union Would Like a Word in Private*, WALL STREET JOURNAL, Aug. 26, 2022, available at: https://www.wsj.com/articles/and-now-the-union-would-like-a-word-in-private-orientation-dues-rights-janus-supreme-court-new-york-california-management-11661541278; Deborah La Fetra and Jeffrey Schwab, *California Workers Have Constitutional Rights—Even if Unions Think They Don't Matter*, THE HILL, September 9, 2019, 7:00AM), https://thehill.com/opinion/finance/460136-california-workers-have-constitutional-rights-even-if-unions-think-they-dont/.

The Indiana legislature may well have had these situations in mind when adopting Ind. Code § 20-29-5-6. The provisions of Ind. Code § 20-29-5-6 help to ensure that employees who agree to join a union do so with full awareness of their rights, and the obligations that will be expected of them. The requirement that an employee verify the authenticity of their authorization form acts as a safeguard against fraud. A prohibition on payroll deductions by the state, similarly, removes the state from essentially subsidizing public-sector unions, which other courts have recognized to be a proper public purpose. *Davenport*, 551 U.S. at 188-89 (citing *Regan*, 461 U.S at 548-50 (1983)). Any of these reasons, or indeed any other "reasonably conceivable state of facts that could provide a rational basis for the classification" would justify the legislature's adoption of SEA 251 and 297. *FCC v Beach Commc'ns, Inc.* 508 U.S. 307, 313 (1993).[9]

---

[9] The requirement that an employee verify the authenticity of their authorization form also acts as a safeguard against fraud. There are a number of cases in which unions have been accused of fraudulently signing dues authorization cards on an employee's behalf. *See Parde v. Service Emps. Int'l Union, Loc. 721*, No. 22-03320 (C.D. Cal. Dec. 9, 2022), *appeal filed*, Jan. 10, 2023; *Zielinski v. Serv. Emps. Int'l Union Loc. 503*, No. 20-36076, 2022 WL 4298160 (9th Cir. Sept. 19, 2022); *Schiewe v. Serv. Emps. Int'l Union Loc. 503*, No. 20-35882, 2023 WL 4417279 (9th Cir. July 10, 2023); *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1117 (9th Cir. 2022); *Jarrett v. Service Emps. Int'l Union Local 503*, No. 21-35133, 2023 WL 4399242 (9th Cir. July 7, 2023); *Trees v. Serv. Emps. Int'l Union Loc. 503*, No. 6:21-cv-468-MK (D. Or. Dec. 8, 2021) (stayed); *Araujo v. Serv. Emps. Int'l Union Loc. 775,* No. 20-05012 (E.D. Wash. Jan. 30, 2020) (settled); *Gatdula v. Serv. Emps. Int'l Union Loc. 775*, No. 20-00476 (W.D. Wash. Mar. 26, 2021) (settled); *Yates v. Washington Fed'n of State Emps.*, No. 20-35879, 2023 WL 4417276 (9th Cir. July 10, 2023); *Jimenez v. Serv. Emps. Int'l Union Loc. 775*, No. 21-03128 (E.D. Wash. Mar. 4, 2022), *appeal filed*, March 17, 2022; *Hubbard v. Serv. Emps. Int'l Union Loc. 2015*, 552 F. Supp. 3d 955 (E.D. Cal. Aug. 6, 2021), *appeal filed*, Aug. 26, 2021; *Marsh v. AFSCME 3299*, No. 21-15309, 2023 WL 4363121 (9th Cir. July 6, 2023); *Semerjyan v. Serv. Emps Int'l Union Loc. 2015*, 489 F. Supp. 3d 1048 (C.D. Cal. Sept. 25, 2020); *Quezambra v. United Domestic Workers of Am., AFSCME Loc. 3930*, No. 20-55643, 2023 WL 4398498 (9th Cir. July 7, 2023); *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1104-05 (9th Cir. 2022). And there are cases where dues have wrongfully been deducted from employees where no agreement with the union existed at all. *See Bourque v. Eng'rs and*

## CONCLUSION

For the reasons stated above, this Court should affirm the lower court with respect to its holding that Ind. Code § 20-29-5-6 does not compel the Appellee Unions to associate with a particular message spoken by the government. It should also reverse the lower court with respect to its determination that these bills discriminate on the basis of viewpoint and uphold Ind. Code § 20-29-5-6.

July 19, 2023

Respectfully Submitted,

/s/ Jeffrey M. Schwab
Jeffrey M. Schwab
Liberty Justice Center
jschwab@libertyjusticecenter.org

---

*Architects Ass'n,* No. 21-04006 (C.D. Cal. Apr. 25, 2023), *appeal filed,* April 18, 2023; *Stoia v. Serv. Emps. Int'l Union Loc. 2015*, No. 20-01760 (E.D. Cal. Aug. 27, 2021). Since Ind. Code. § 20-29-5-6 requires an employee to verify that their authorization is valid, this serves as yet another rational basis for the law.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Seventh Circuit Rule 29 because it contains 6,708 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit Rule 32(b) and the type style requirements of Fed. R. App. P. 32(a)(6) and Seventh Circuit Rule 32(c) because it was prepared using Microsoft Word and uses a proportionally spaced typeface, Century Schoolbook, in 12-point type for body text and 11-point type for footnotes.

/s/ Jeffrey M. Schwab
Jeffrey M. Schwab
Liberty Justice Center
jschwab@libertyjusticecenter.org

*Attorney for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2023, I served the forgoing brief of amici curiae upon all counsel of record by electronically filing the brief with the appellate CM/ECF system.

/s/ Jeffrey M. Schwab
Jeffrey M. Schwab
Liberty Justice Center
jschwab@libertyjusticecenter.org

*Attorney for Amici Curiae*