No. 23-1823

─────────────────────────────

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

─────────────────────────────

ANDERSON FEDERATION OF TEACHERS, ET AL.,

Plaintiffs-Appellees,

v.

TODD ROKITA,

Defendant-Appellant.

─────────────────────────────

On Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division
No. 1:21-cv-1767-SEB-DML
The Honorable Sarah Evans Barker, Judge

─────────────────────────────

AMICUS CURIAE BRIEF OF NATIONAL RIGHT TO WORK LEGAL DEFENSE
FOUNDATION, INC. IN SUPPORT OF THE BRIEF OF DEFENDANT-APPELLANT
AND IN SUPPORT OF REVERSING THE DISTRICT COURT'S JUDGMENT

─────────────────────────────

William L. Messenger
Alyssa K. Hazelwood
Milton L. Chappell
c/o National Right to Work Legal
    Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Telephone: (703) 321-8510
E-Mail: wlm@nrtw.org
          akh@nrtw.org
          mlc@nrtw.org

*Counsel for Amicus Curiae*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1823

Short Caption: Anderson Federation of Teachers v. Rokita

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    National Right to Work Legal Defense Foundation, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    n/a

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        n/a

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    n/a

Attorney's Signature: /s/Alyssa K. Hazelwood    Date: 7/19/23

Attorney's Printed Name:  Alyssa K. Hazelwood

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✔]  No [ ]

Address:  c/o National Right to Work Legal Defense Foundation, Inc.

    8001 Braddock Road, Suite 600, Springfield, VA 22160

Phone Number: 703-321-8510    Fax Number:  703-321-9319

E-Mail Address: akh@nrtw.org

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1823

Short Caption: Anderson Federation of Teachers v. Rokita

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

National Right to Work Legal Defense Foundation, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

n/a

(3)    If the party, amicus or intervenor is a corporation:

i)       Identify all its parent corporations, if any; and

n/a

ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/William L. Messenger      Date: 7/19/23

Attorney's Printed Name: William L. Messenger

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: c/o National Right to Work Legal Defense Foundation, Inc.

8001 Braddock Road, Suite 600, Springfield, VA 22160

Phone Number: 703-321-8510       Fax Number: 703-321-9319

E-Mail Address: wlm@nrtw.org

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-1823</u>

Short Caption: <u>Anderson Federation of Teachers v. Rokita</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>National Right to Work Legal Defense Foundation, Inc.</u>

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>n/a</u>

(3)     If the party, amicus or intervenor is a corporation:

i)       Identify all its parent corporations, if any; and
<u>n/a</u>

ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
<u>n/a</u>

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
<u>n/a</u>

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
<u>n/a</u>

Attorney's Signature: <u>/s/Milton L. Chappell</u>          Date: <u>7/19/23</u>

Attorney's Printed Name:  <u>Milton L. Chappell</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ☑

Address:  <u>c/o National Right to Work Legal Defense Foundation, Inc.</u>

<u>8001 Braddock Road, Suite 600, Springfield, VA 22160</u>

Phone Number: <u>703-321-8510</u>          Fax Number: <u>703-321-9319</u>

E-Mail Address: <u>mlc@nrtw.org</u>

rev. 12/19 AK

# TABLE OF CONTENTS

**Page(s)**

Disclosure Statements ........................................................................................................... i

Table of Authorities ............................................................................................................ v

Interest of the Amicus Curiae ............................................................................................ 1

Argument .............................................................................................................................. 2

   A.   SEA 251 and 297 amend the Teacher Collective Bargaining Statute, not the general Wage Assignment Statute ..................................................................................................... 2

   B.   Teachers are not similarly situated with other public-sector employees for purposes of collective bargaining .......................................................................................................... 4

   C.   The District Court erred by concluding the speaker-based distinction is viewpoint discrimination .................................................................................................................... 7

      1.   The District Court's finding that members of teacher unions and teachers unions have the same "inherent" viewpoints is without foundation ............................................ 7

      2.   The District Court's analysis is inconsistent with the decisions of other circuit courts. 10

Conclusion .......................................................................................................................... 12

Certificate of Compliance .................................................................................................. 13

Certificate of Service ......................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**                                           **Page(s)**

*Am. Commc'ns Ass'n v. Douds*,
    339 U.S. 382 (1950)................................................................................6

*Ark. State Highway Emps. Local 1315 v. Kell*,
    628 F.2d 1099 (8th Cir. 1980) ..........................................................10

*Bailey v. Callaghan*,
    715 F.3d 956 (2013)...................................................................10, 12

*D'Agostino v. Baker*,
    812 F.3d 240 (1st Cir. 2016)...............................................................9

*Farm Lab. Org. Comm. v. Stein*,
    56 F.4th 339 (4th Cir. 2022) .............................................................10

*Harris v. Quinn*,
    573 U.S. 616 (2014)............................................................................1

*Hudson v. Chi. Teachers Union Loc. No. 1*,
    743 F.2d 1187 (7th Cir. 1984), *aff'd* 475 U.S. 292 (1986) .................1

*Int'l Union of Operating Eng'rs, Local 139 v. Daley*,
    983 F.3d 287 (7th Cir. 2020) ..............................................................1

*Janus v. AFSCME, Council 31*,
    138 S. Ct. 2448 (2018)................................................................1, 6, 9

*Mich. State AFL-CIO v. Schuette*,
    847 F.3d 800 (6th Cir. 2017) ............................................................10

*Minn. State Bd. for Cmty Colls. v. Knight*,
    465 U.S. 271 (1984)............................................................................9

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012)............................................................................4

*S.C. Educ. Ass'n v. Campbell*,
    883 F.2d 1251 (4th Cir. 1989) ..........................................................10

*Sarauer v. Int'l Ass'n. of Machinists & Aerospace Workers, Dist. No. 10*,
    No. 16-cv-361, 2019 WL 4750516 (E.D. Wis. Sept. 30, 2019) ..........8

# TABLE OF AUTHORITIES

**CASES**                                                                       **Page(s)**

*Sierra Club, Inc. v. EPA,*
    358 F.3d 516 (7th Cir. 2004) ........................................................................1

*Sweeney v. Pence,*
    767 F.3d 654 (7th Cir. 2014) ........................................................................6

*Sweeney v. Raoul,*
    990 F.3d 555 (7th Cir. 2021) ........................................................................1

*Teamsters Local 391 v. Terry,*
    494 U.S. 558 (1990)........................................................................................6

*Toledo Area AFL-CIO Council v. Pizza,*
    154 F.3d 307 (6th Cir. 1998) ......................................................................10

*Utah Educ. Ass'n v. Shurtleff,*
    565 F.3d 1226 (10th Cir. 2009) ..................................................................10

*Wis. Educ. Ass'n Council v. Walker,*
    705 F.3d 640 (7th Cir. 2013) ........................................................7, 9, 10, 12

## CONSTITUTION, STATUTES, AND RULES

United States Constitution
    U.S. Const. amend. I ................................................................................6, 11

Ill. Comp. Stat. ch. 115,
    § 5/1 *et seq.* ....................................................................................................5
    § 315/1 *et seq.* ................................................................................................5

Indiana Code,
    § 4-15-17-1.....................................................................................................5
    § 4-15-17-4.....................................................................................................5
    § 4-15-17-5.....................................................................................................5
    § 20-28..........................................................................................................3
    § 20-29-2-4....................................................................................................3
    § 20-29-2-13..................................................................................................3
    § 20-29-3.......................................................................................................7
    § 20-29-5....................................................................................................3, 5
    § 20-29-5-2....................................................................................................6
    § 20-29-5-6.................................................................................................3, 4

## TABLE OF AUTHORITIES

**CONSTITUTION, STATUTES, AND RULES**                                **Page(s)**

Indiana Code,
    § 20-29-5-6(a) ...........................................................................4, 6, 11
    § 20-29-5-6(b) ................................................................................4
    § 20-29-5-6(c)(5) ..........................................................................12
    § 20-29-6-4 ....................................................................................2
    § 22-2-6 .........................................................................................3
    § 22-2-6-2(a) .................................................................................3
    § 22-2-6-2(b) .............................................................................3, 4
    § 36-8-22-2 ....................................................................................5
    § 36-8-22-9 ....................................................................................5
    § 36-8-22-12 ..................................................................................5

Indiana Senate Enrolled Act 251 ......................................................... *passim*

Indiana Senate Enrolled Act 297 ......................................................... *passim*

Mich. Comp. Laws,
    § 423.215 *et seq.* .........................................................................5

Ohio Rev. Code Ann.,
    § 4117.01 *et seq.* .........................................................................5

Wis. Stat. Ann.,
    § 111.70 *et seq.* ...........................................................................5
    § 111.81 *et seq.* ...........................................................................5

Federal Rules of Appellate Procedure
    Rule 29 ..........................................................................................1
    Rule 29(a)(4)(E) .............................................................................1
    Rule 32(g) ....................................................................................13

Circuit Rule 29 ...................................................................................13

## MISCELLANEOUS

American Educator, AFT (Summer 2023) https://www.aft.org/sites/default/files/media/documents/2023/AE_Summer_2023_FINAL.pdf.............................................................8

Insurance, AFT Member Benefits, https://www.aft.org/member-benefits/insurance (last visited July 16, 2023).................................................................................12

**MISCELLANEOUS** **Page(s)**

Our Benefits, Ind. State Teachers Ass'n, https://www.ista-in.org/our-benefits (last visited July 16, 2023) ................................................................................................................................................8

Peers McCoy, Dylan, A Competing Group Moves to Decertify and Replace the Embattled IPS Teachers Union, Chalkbeat Indiana (Feb. 20, 2019), https://in.chalk-beat.org/2019/2/20/21106934/a-competing-group-moves-to-decertify-and-replace-the-embattled-ips-teachers-union ......................................................................................................................8

Schneider, Chelsea, Coalition of Carmel Teachers Vying to Replace Union, IndyStar (Aug. 25, 2016), https://www.indystar.com/story/news/education/2016/08/25/coalition-carmel-teachers-vying-replace-union/89269518 ..........................................................................................................8

## INTEREST OF THE AMICUS CURIAE

Since 1968, the National Right to Work Legal Defense Foundation, Inc., has been the nation's leading advocate for employee freedom to choose whether to associate with unions. To this end, Foundation staff attorneys have represented individual employees before the Supreme Court and the Seventh Circuit in many groundbreaking free speech and association cases. *E.g.*, *Janus v. AF-SCME, Council 31*, 138 S. Ct. 2448 (2018); *Harris v. Quinn*, 656 F.3d 692 (7th Cir. 2011), *rev'd in part*, 573 U.S. 616 (2014); *Hudson v. Chi. Teachers Union Loc. No. 1*, 743 F.2d 1187 (7th Cir. 1984), *aff'd* 475 U.S. 292 (1986). Foundation attorneys have also filed amicus briefs in cases before this Court which implicated employee freedom of choice. *E.g.*, *Sweeney v. Raoul*, 990 F.3d 555 (7th Cir. 2021); *Int'l Union of Operating Eng'rs v. Daley*, 983 F.3d 287 (7th Cir. 2020). The Foundation submits this brief pursuant to Federal Rule of Appellate Procedure 29 to highlight facts and legal considerations the District Court ignored in its holding and that are not the focus of the brief submitted by Defendant-Appellant Indiana Attorney General Todd Rokita (hereafter "State" or "Indiana").[1] *See Sierra Club, Inc. v. EPA*, 358 F.3d 516, 518 (7th Cir. 2004) (recognizing the value of amicus curiae briefs in bringing to the Court's attention facts and legal perspectives the parties have not adequately developed).

---

[1] The Foundation states, pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), that no party's counsel authored this brief in whole or in part; no party or a party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person other than the amicus curiae contributed money intended to fund preparing or submitting the brief.

**ARGUMENT**

The District Court relied on three incorrect assumptions when finding Senate Enrolled Acts ("SEA") 251 and 297 amount to viewpoint discrimination: (1) that these reforms singled out teachers in an unprecedented manner; (2) that there are Indiana public-sector employees similarly situated to public school teachers; and (3) that members of teacher unions share a common  viewpoint. *See* SA 29.[2] Each assumption is untenable. The Foundation will address each in turn.

**A.  SEA 251 and 297 amend the Teacher Collective Bargaining Statute, not the general Wage Assignment Statute.**

The District Court erroneously suggests that the statute that SEA 251 and 297 relate to is Indiana's general wage assignment law, Indiana Code Section 22-2-6 (hereafter "Wage Assignment Statute"). For example, in describing the Union's argument, the lower court stated that "[n]one of the other seventeen types of wage assignments permitted in Indiana's Wage Assignment statute that is subject to SEA 251 and SEA 297 are subject to such requirements to secure the benefits of those statutory procedures." SA 28. Based on this incorrect correlation between SEA 251 and 297 and the Wage Assignment Statute, the District Court concluded that "SEA 251 and SEA 297 single out a specific group—union-supporting teachers—to subject to additional procedural requirements in order to take advantage of payroll deductions for union dues, but for no other state employees seeking wage assignments." SA 29; *see also* SA 31–32 (District Court claiming that because SEA 251 and 297 apply only to teachers, they are "serious[ly] underinclusive[e]").

Contrary to the lower court, the reason SEA 251 and 297 apply only to teachers is a wholly legitimate one: the statute these Acts amended *applies only to teachers.* SEA 251 and 297 did not amend Indiana's general Wage Assignment Statute. The Acts amended the Indiana Code provision

---

[2] References to the Short Appendix filed by the State are denoted "SA."

that specifically authorizes dues deductions for teachers, Indiana Code § 20-29-5-6. This narrow dues deduction law does not lie within Indiana's general wage assignment laws, but within a specialized statute dealing with collective bargaining by teachers, Indiana Code § 20-29-5 (hereafter "Teacher Collective Bargaining Statute").[3]

Indiana's Wage Assignment Statute generally allows, but does not mandate, payroll deductions for seventeen purposes upon receipt of a written authorization. The statute prescribes the minimum qualifications for such an authorization to be valid,[4] and if those conditions are valid, a "wage assignment under this section *may be made* for the purpose of paying" certain types of payments, including union dues. Ind. Code § 22-2-6-2(b) (emphasis added).

Indiana Code Section 20-29-5-6 prescribes additional rules applicable only to payroll deductions of union dues from teachers. This includes requiring that school employers make those deductions.

---

[3] Article 29 refers to covered employees as "school employees," however that term appears to be synonymous with "teachers" for purposes of the Article. *See* Ind. Code §§ 20-28, 20-29-2-4, 20-29-2-13.

[4] Any assignment of the wages of an employee is valid only if all of the following conditions are satisfied:

(1) The assignment is:
>    (A) in writing;
>    (B) signed by the employee personally;
>    (C) by its terms revocable at any time by the employee upon written notice to the employer; and
>    (D) agreed to in writing by the employer.
(2) An executed copy of the assignment is delivered to the employer within ten (10) days after its execution.
(3) The assignment is made for a purpose described in subsection (b).

Ind. Code § 22-2-6-2(a).

> Subject to subsection (c), the school employer *shall*, on receipt of the written authorization of a school employee:
> (1) deduct from the pay of the employee any dues designated or certified by the appropriate officer of a school employee organization that is an exclusive representative of any employees of the school employer; and
> (2) remit the dues described in subdivision (1) to the school employee organization.

Ind. Code § 20-29-5-6(a) (emphasis added). These requirements are part of a labor statute governing collective bargaining for teachers. *See* Ind. Code § 20-29-5-6(b); *see generally* Ind. Code Art. 29. No other Indiana public employees are subject to such a labor statute.

The District Court failed to recognize the import of the fact that SEA 251 and 297 amended an existing labor statute applicable only to teachers, as opposed to a generally applicable law. This failure matters. Once recognized, it becomes clear that SEA 251 and 297 did not "single out a specific group—union-supporting teachers," as the District Court claimed (at SA 29), any more than any reform to Indiana's Teacher Collective Bargaining Statute would single out teachers. If Indiana can enact a labor statute applicable only to public school teachers, school employers, and unions, then Indiana can also make changes to that labor statute that apply only to those parties. Indiana thus did not discriminate against teachers when it chose to amend a payroll deduction provision of a labor statute applicable only to teachers, Indiana Code § 20-29-5-6.

## B. Teachers are not similarly situated with other public-sector employees for purposes of collective bargaining.

The District Court's opinion also relies on the erroneous premise there are public-sector employees in Indiana similarly situated to teachers in ways relevant to this case. *See, e.g.* SA 8 (finding the "provisions set forth in SEA 251 apply only to teachers and no other public employees in Indiana."); SA 29. From this false premise, the District Court reasoned that, because the legislature did not include public sector employees other than teachers in SEA 251 and 297, the legislature "seems to have done so based on this group's specific purposes and views." SA 29–30. Tellingly,

the District Court does not cite to other Indiana statutes that authorize collective bargaining for public employees other than public school teachers. This is for good reason. Unlike in some states where most or all public employees are subject to a collective bargaining law,[5] Indiana only expressly authorizes mandatory collective bargaining for teachers. *See* Ind. Code. § 20-29-5.

Collective bargaining is illegal for most State employees. Ind. Code § 4-15-17-4. The State cannot recognize a union to be the exclusive representative of these employees, bargain with that monopoly representative, or enter into a collective bargaining agreement with it. Ind. Code § 4-15-17-5. While certain types of employees are exempt from this prohibition on collective bargaining—such as employees of political subdivisions, the state police department, and state educational institutions, Ind. Code § 4-15-17-1—no State law affirmatively empowers unions to act as exclusive representatives of these exempted employees and requires the public employers to collective bargain with these representatives or deduct dues on their behalf.

The only type of Indiana public employee other than teachers who are subject to a statutorily authorized scheme of exclusive representation are police and fire department personnel. *See* Ind. Code § 36-8-22-2. However, while exclusive representation of police and fire personnel is permitted under Indiana Code § 36-8-22-9, their public employer is *not* required to collectively bargain with that representative as school districts are required to do with teacher unions. Rather, police and fire departments are only required to "meet and confer" with an exclusive representative upon written notice. Ind. Code § 36-8-22-12.

---

[5] *See, e.g.*, Ill. Comp. Stat. ch. 115, § 5/1 *et seq.* (public educational employees); Ill. Comp. Stat. ch. 5, § 315/1 *et seq.* (state and other public employees); Mich. Comp. Laws, 423.215 *et seq*, (all public employees); Ohio Rev. Code Ann. § 4117.01 *et seq.* (all public employees); Wis. Stat. Ann. § 111.70 *et seq.* (municipal employees): Wis. Stat. Ann. § 111.81 *et seq.* (state employees).

In contrast to other public employees, Indiana grants teacher unions a host of powers and benefits under the Teacher Collective Bargaining Statute. This includes the authority to compel all teachers in a workplace to accept the union as their exclusive representative, including teachers who want nothing to do with that union. Ind. Code § 20-29-5-2. It also includes the authority to force school employers to collectively bargain with the union, Ind. Code § 20-29-6-4, and the authority to require school employers to deduct for the union from teachers' wages, Ind. Code § 20-29-5-6(a). These are extraordinary power and privileges. As the Supreme Court recognized in *Janus v. AFSCME, Council 31*:

> [D]esignation as the exclusive representative confers many benefits. As noted, that status gives the union a privileged place in negotiations over wages, benefits, and working conditions. Not only is the union given the exclusive right to speak for all the employees in collective bargaining, but the employer is required by state law to listen to and to bargain in good faith with only that union. Designation as exclusive representative thus "results in a tremendous increase in the power" of the union.

138 S. Ct. 2448, 2467 (2018) (internal citations omitted) (citing *Am. Commc'ns Ass'n v. Douds*, 339 U.S. 382, 401 (1950)); *see Teamsters Local 391 v. Terry*, 494 U.S. 558, 567 (1990) (discussing unions' benefits of exclusive representation status); *Sweeney v. Pence*, 767 F.3d 654, 666 (7th Cir. 2014) (same).[6]

In light of the powers and benefits that Indiana's Teacher Collective Bargaining Statute showers on teacher unions and no one else, it is clear that the State did not single out teacher unions for an impermissible purpose in SEA 251 and 297. The State merely reformed one of the myriad

---

[6] Without these powerful State-granted benefits, a union would just be an informal group of employees, like any other private association. In Indiana, teachers' unions are the only entities with a State-granted collective bargaining regime. For this reason, teachers could be considered "more in need of an advisement of their First Amendment rights with respect to payroll deductions for union dues compared to other public sector employees," SA 31, and rationally targeted for increased protection of their First Amendment rights.

privileges it grants to teachers unions—having school employers collect their dues money—to better protect teachers' rights and freedom of choice.

This Court recognized in *Wisconsin Education Association Council v. Walker*, 705 F.3d 640, 646 (7th Cir. 2013), that a state can prohibit dues deductions for certain types of employees and allow them for others. Here, there is even less of a concern about distinctions between classes of employees as there was in *Walker* because SEA 251 and 297 did not *create* any new distinction between different classes of employees as Wisconsin did in *Walker*. Instead, the legislature amended a statute (the Teacher Collective Bargaining Statute) that already distinguished between teachers and other types of public employees.

## C. The District Court erred by concluding the speaker-based distinction is viewpoint discrimination.

### 1. The District Court's finding that members of teacher unions and teachers unions have the same "inherent" viewpoints is without foundation.

The District Court described teachers who are union members and their unions as a "group whose identity and viewpoints are sufficiently intertwined to be synonymous" and having "an inherent connection to a particular viewpoint." SA 29. The District Court does not elucidate these points. In fact, the lower court does not even give an example of a viewpoint union-member teachers inherently share with one another or with unions, let alone one that is in "direct conflict with the State's interests and views on various political issues impacting public education." SA 29. This is for good reason. Teachers who are union members are not an ideological monolith, but have varying views on political and educational issues.

Teachers may join unions for reasons that have nothing to do with supporting that entity's viewpoints. Some teachers may join to vote on union leadership or on the union contract that will govern their terms of employment, which teachers cannot do if they are nonmembers. *See, e.g.*,

*Sarauer v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10*, No. 16CV361, 2019 WL 4750516 at *3 (E.D. Wis. Sept. 30, 2019) (recognizing non-members are not entitled to attend union meetings or participate in contract ratification votes). Other teachers may join a union to obtain an ostensible benefit of membership, like access to certain insurance programs or professional development resources.[7] Some teachers may join to avoid harassment from union organizers or to avoid peer pressure and ostracization from union-supporting coworkers.

Even teachers who support some of a union's political positions may oppose its other positions. There are two competing national teacher unions with numerous affiliates – National Education Association and American Federation of Teachers. These unions and independent teacher unions speak on a host of issues, ranging from bargaining for terms and conditions of employment, to professional development, to partisan political issues. *See, e.g.*, American Educator, AFT (Summer 2023) https://www.aft.org/sites/default/files/media/documents/2023/AE_Summer_2023_FINAL. pdf (periodical issued by AFT discussing a wide range of topics). The notion that teachers who are members of these different unions all march in ideological lockstep is untenable. Indeed, teachers sometimes oust one union and replace with it another, as occurred in Carmel, Indiana.[8]

---

[7] *See, e.g.*, Insurance, AFT Member Benefits, https://www.aft.org/member-benefits/insurance (last visited July 16, 2023) (AFT advertises insurance programs as a benefit of membership.);  Our Benefits, Indiana State Teachers Association, https://www.ista-in.org/our-benefits (last visited July 16, 2023) (ISTA advertises: "[t]he value of your membership extends beyond the collective voice, bargaining and professional development. ISTA provides extensive legal resources and support for our members when confronted with workplace suits and direct legal assistance to protect members' rights.").

[8] *See* Schneider, Chelsea, Coalition of Carmel Teachers Vying to Replace Union, IndyStar, https://www.indystar.com/story/news/education/2016/08/25/coalition-carmel-teachers-vying-re-place-union/89269518 (Aug. 25, 2016); Peers McCoy, Dylan, A Competing Group Moves to Decertify and Replace the Embattled IPS Teachers Union, Chalkbeat Indiana, https://in.chalk-beat.org/2019/2/20/21106934/a-competing-group-moves-to-decertify-and-replace-the-embattled-ips-teachers-union (Feb. 20, 2019) (noting the new union won over 60 percent of the vote).

In short, a teacher being a union member does not mean that teacher agrees with some or all of a union's positions and advocacy. The Supreme Court recognized as much in *Minnesota State Board for Community Colleges v. Knight* when finding that "not every [college] instructor agrees with the official faculty [union] view on every policy question." 465 U.S. 271, 276 (1984); *see also D'Agostino v. Baker*, 812 F.3d 240, 244 (1st Cir. 2016) (Souter, J by designation) (recognizing that "when an exclusive bargaining agent is selected by majority choice, it is readily understood that employees in the minority, union or not, will probably disagree with some positions taken by the agent answerable to the majority.").

A union's status as an exclusive representative of a unit of teachers may associate those teachers with that union and its speech, but this compelled association does mean those teachers actually agree with that union's speech. Regimes of exclusive representation grant unions the "exclusive right to speak for all the employees in collective bargaining," *Janus*, 138 S. Ct. at 2467, including for employees who vehemently disagree with the union and its advocacy. It is for this and other reasons that "[d]esignating a union as the employees' exclusive representative substantially restricts the rights of individual employees." *Id*. at 2460; *see id*. at 2469 (similar). The designation does not prove those individual employees support their mandatory representative's viewpoints.

The District Court erred when stereotyping teachers who are union members as individuals who share "a particular viewpoint." SA 29. The lower court failed to identify these supposed viewpoints, much less demonstrate that most or all teachers hold those views. This groundless supposition thus cannot be grounds for inferring viewpoint discrimination in a facially neutral statute. *See Walker*, 705 F.3d 640.

**2.  The District Court's analysis is inconsistent with the decisions of other circuit courts.**

Not only is the premise of the District Court's viewpoint discrimination holding untenable, but so too is the lower court's analysis that wrongly conflates speaker-based restrictions with view-point-based restrictions. The State has cogently explained why that analysis defies this Court's holding in *Walker*. State Br. at 17–24. The Foundation will not repeat those points, but rather discuss why the lower court's holding conflicts with decisions of other circuit courts that rejected First Amendment challenges to statutes that banned payroll deductions of union dues or political contributions. *See Farm Lab. Org. Comm. v. Stein*, 56 F.4th 339, 350 (4th Cir. 2022); *S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1257 (4th Cir. 1989); *Mich. State AFL-CIO v. Schuette*, 847 F.3d 800, 805–06 (6th Cir. 2017); *Bailey v. Callaghan*, 715 F.3d 956, 958 (6th Cir. 2013); *Ark. State Highway Emps. Loc. 1315 v. Kell*, 628 F.2d 1099, 1102 (8th Cir.1980); *Utah Educ. Ass'n v. Shurtleff*, 565 F.3d 1226, 1229–31 (10th Cir. 2009).

The Fourth Circuit has twice held payroll deduction conditions or restrictions do not restrict a union's or employees' constitutional rights. *See Stein*, 56 F.4th at 350 (4th Cir. 2022); *Campbell*, 883 F.2d at 1253. The Fourth Circuit reasoned that, if a state bans payroll deductions of union dues, unions remain able "to associate, to solicit members, to express its views, to publish or disseminate material, to engage in political activities, [and] to affiliate or cooperate with other groups." *Campbell*, 883 F.2d at 1256. Consequently, a state choosing not to assist a union with collecting dues from employees does not implicate First Amendment rights. *See id.; see also Schuette*, 847 F.3d at 805 (quoting *Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 319 (6th Cir. 1998) (finding that "the 'wage checkoff ban simply [did] not impinge, in a constitutionally significant manner, on any First Amendment rights.'").

Most pertinently here, the Sixth Circuit in *Bailey* rejected a First Amendment viewpoint discrimination challenge to a Michigan statute that prohibits public school employers, but not other public employers, from deducting union dues from employees' wages. 715 F.3d at 959. As in this case, unions argued the state had singled out public-school employees and their unions. *Id.* The Sixth Circuit rejected this notion because the statute is facially neutral:

> [E]ven if one assumes that viewpoint discrimination would be problematic with respect to payroll deductions . . . Public Act 53 by its terms does not discriminate based upon viewpoint. It does not, for example, grant certain unions access to the payroll-deduction process, and deny access to others, based upon whether a union supports or opposes a particular policy position. To the contrary, the Act says nothing about speech of any kind. The Act is therefore facially neutral as to viewpoint.

*Id.* The Sixth Circuit also reasoned that the statute did not target particular unions because it barred certain *public employers* from collecting dues. *Id.* at 959–60. The Court found "[t]he particular union to which an employee belongs, therefore, is irrelevant to whether a public employer can collect the employee's membership dues. What matters, instead, is who the *employer* is." *Id.*

The same is true here. Indiana Code Section 20-29-5-6 governs when and how a "school employer" can deduct union dues from the wages of teachers. Ind. Code § 20-29-5-6(a). The reforms SEA 251 and 297 made to the statute concern the conduct of school employer. For example, after SEA 251 and 297, the statute requires:

> Upon the submission of a written or electronic mail request to a *school employer*, a school employee shall have the right to cease the withholding of school employee organization dues from their pay. Upon receipt of a request, the *school employer* shall:
>
> (A) cease the withholding of school employee organization dues from the school employee's pay beginning on the first day of the employee's next pay period; and
>
> (B) provide written or electronic mail notification of the school employee's decision to the school employee organization.

Ind. Code § 20-29-5-6(c)(5) (emphasis added). As with the dues deduction statute in *Bailey*, Indiana's statute governs employer conduct and is neutral with respect to the views of unions and their members. Indiana's payroll deduction reforms are constitutional under *Bailey*.

The District Court's holding conflicts not only with this Court's holding in *Walker*, but also conflicts with precedents from the Fourth, Sixth, Eighth, and Tenth Circuits. The lower court's anomalous decision should rejected and the Indiana's reforms upheld.

## CONCLUSION

For the foregoing reasons and the reasons discussed by the State, the District Court's opinion should be reversed and the permanent injunction dissolved.

Dated: July 19, 2023

/s/Alyssa K. Hazelwood
Alyssa K. Hazelwood
William L. Messenger
Milton L. Chappell
c/o National Right to Work Legal
    Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, VA 22160
Telephone: (703) 321-8510
E-Mail: akh@nrtw.org
            wlm@nrtw.org
            mlc@nrtw.org

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type limitations provided in Circuit Rule 29. The foregoing brief was prepared using Microsoft Word and contains 3,647 words in 12-point proportionately spaced Times New Roman font.

/s/ Alyssa K. Hazelwood
Alyssa K. Hazelwood

*Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2023, I electronically filed the foregoing Amicus Curiae Brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  All parties will be served through the CM/ECF system.

/s/ Alyssa K. Hazelwood
Alyssa K. Hazelwood

*Counsel for Amicus Curiae*